NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-251

KAREN KOUTRAKOS & another[1]

vs.

HELEN LALLO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case concerns a dispute regarding the ownership of a residential property located at 665 Townsend Street in Fitchburg, Massachusetts (the property).  The property was owned by Michael Koutrakos, the father of all the parties involved in this case.  Michael[2] transferred the property to his only daughter from his first marriage, the defendant Helen Lallo, by quitclaim deed in 2012.  In 2021, about seven years after Michael died, plaintiffs Karen Koutrakos and Christina Goguen, two of Michael's four surviving children from his second

_____

[1] Christina Goguen.

[2] As several members of the family share the same last name, we refer to them by their first names for ease of reference.

marriage, brought this action challenging Lallo's ownership of the property. Following a trial, a judge of the Probate and Family Court awarded the property to Lallo. This appeal ensued.

Background. We summarize the facts found by the judge, reserving certain details for our discussion of the issues. Michael and Lallo's mother were divorced in 1951 when Lallo was five years old. Following the divorce, Lallo lived with her mother and never resided at the property, which Michael purchased in 1972 with his second wife, Irene. Michael and Irene had five children together: Karen, Christina, Michael (deceased), William and Pamela, all of whom were raised in the home on the property. Michael also operated an appliance maintenance business known as Fitchburg Appliance in a separate building located on the property. Michael was prone to making poor business decisions and, at one point in 2003 or 2004, he failed to pay a debt owed to a vendor and a lien was placed on the property. Ultimately, the debt was paid by Irene and William; William contributed $10,000 to resolve the matter and Irene contributed the remaining funds. Thereafter, at Irene's urging, the property was placed in a trust (the 665 Townsend Street Realty Trust) and deeded to William as trustee. However, once Irene died in 2008, Michael sued William to recover ownership of the property. William acquiesced to his father's

2

wishes and, after he was reimbursed for the $10,000, he conveyed the property back to Michael by quitclaim deed. The deed was prepared by Attorney Christine Tree.

At about the same time, Michael asked Attorney Tree to prepare his last will and testament (will), which he executed on October 9, 2008. As relevant here, Michael left the property to Karen and Christina. At this time, Karen was living in the home with her father. The will specified that Michael "intentionally" failed to provide for William, Pamela, and Lallo. As regards Pamela and Lallo, the will clarified that they were excluded "not from any lack of love or affection, but instead, due to my belief that they have otherwise been amply provided for in life." The judge found that Michael told Karen about the will almost immediately after it was executed.

As noted, Lallo never lived with her father after 1951, but they remained in contact throughout the years. In May of 2012, Lallo's husband was diagnosed with a serious medical condition that led to his death. After learning of the diagnosis, Michael decided to transfer the property to Lallo. Michael contacted a different attorney from the one who had prepared his will, Robert Terk, and asked him to prepare a quitclaim deed transferring the property to Lallo. Attorney Terk did so, Michael signed the deed, and Attorney Terk recorded the deed at

3

the registry of deeds.  The judge specifically found that Michael had the required capacity to execute the deed and was not subject to any undue influence or fraud at the time.  Shortly thereafter, Michael told Lallo that he had transferred the property to her.  The judge found that Michael did not give Lallo any instructions or place any limitations on the scope of her ownership of the property and did not mention either plaintiff.  Michael also informed Karen that he had transferred the property to Lallo.  The judge found that during that conversation, Michael told Karen that he trusted Lallo "to do the right thing."[3]

Michael died on April 2, 2015.[4]  Karen had been Michael's primary caretaker for a number of years before his death and together with an employee of Fitchburg Appliance, John Anderson, who lived on the property, she also continued to operate the business.  The judge found that from the time Michael

_____

[3] While the judge found that Karen testified credibly that "[Michael] said that he trusted [Lallo] to do the right thing," he did not find any of her additional testimony about the conversation credible.

[4] Michael had diabetes and suffered from alcoholism and chronic pain.  The judge did not credit Karen's testimony about the severity of Michael's health issues at the time he transferred the property to Lallo; however, by 2014, Michael's health had worsened.  By June 2014, Michael was approved for twenty-four hour care by Medicare, and by September of that year, he was admitted to a skilled nursing facility.

transferred the property to Lallo in 2012 until he died three years later, Michael made a number of different representations to the plaintiffs and to others about what would become of the property on his death.[5]  Although the reasons for Michael's obfuscations were not entirely clear, he made no changes to his estate plan after he transferred the property to Lallo, even though he had the opportunity to do so.  For example, in September 2014, when Michael was at a skilled nursing facility, Karen asked Attorney Terk to prepare various documents seeking to (1) appoint her as Michael's attorney-in-fact, (2) convey the property to her and Christina, and (3) make a declaration of homestead in her favor, but Michael refused to meet with Attorney Terk and did not sign any of the documents.

He also did not modify his estate plan after meeting with Attorney Tree shortly before he died.  As previously noted, Attorney Tree had prepared Michael's will years earlier.

---

[5] The judge credited testimony from Michael's grandchildren that Michael stated, at various times, that the property would go to Karen and Christina after his death and that Lallo would transfer the property to the sisters and take care of them.  The judge also found, however, that between execution of the 2012 deed and his death, Michael told various versions of stories about what would happen to the property when he died.  Michael's inconsistent comments about the title to the property were not a secret among family members.  The judge noted that written communications between Lallo's son and Christina illustrate this point.  At one point the son wrote that he had heard "some versions of the story and honestly my eyes glaze over."

Attorney Tree met with Michael in March 2015.  At that time, Michael did not remember having executed the quitclaim deed transferring the property to Lallo, but he nonetheless made no relevant changes to his estate plan.[6]  Soon after Michael died, around November 2015, Karen asked Lallo to transfer the property to her by signing a quitclaim deed which Karen had prepared on her own.  Lallo did not do so.  She informed Karen that she was concerned about potential liens and felt "uneasy signing anything without talking to a professional."

Meanwhile, following Michael's death, Karen continued to live at the property with Anderson, and the two continued to operate Fitchburg Appliance.  The two also paid for various expenses, including taxes and insurance on the property until 2021, at which time Lallo received notice that the insurance policy on the property was cancelled due to the poor condition of the house.  Thereafter, Lallo obtained property insurance for which she paid.  The new insurance company subsequently sent a remedial condition notification to Lallo, detailing numerous problems with the property.  In written messages between Lallo and Karen in April 2021, Lallo expressed the view that the

---

[6] Michael made one request during the meeting.  He asked to change a 2009 codicil to his will in which he bequeathed his motorcycle to a girlfriend, because he was no longer dating the woman.

6

property had become a liability and "needs to be sold," to which Karen responded that the property should instead be transferred to her and Christina. On May 20, 2021, Karen, with the assistance of Attorney Tree, attempted to negotiate purchasing the property and offered to pay Lallo $40,000. Lallo did not respond to the offer and instead hired a real estate agent to sell the property, thereby prompting this lawsuit.

The complaint was filed in July 2021, pursuant to G. L. c. 215, § 6, "to establish and affirm [the plaintiffs'] 100% ownership" in the property. Counts one through three of the complaint alleged (1) the existence of a constructive trust, (2) mistake, and (3) lack of intent on the part of Michael. In count four, the plaintiffs sought a declaratory judgment that the 2012 transfer of the property to Lallo was improper and void. They also sought reformation of the deed, injunctive relief, rescission of the deed, and judicial reformation (counts five through eight).

The judge rejected the plaintiffs' claims in a thoughtful memorandum and order. He summarized the argument as follows:

> "Essentially, the Plaintiffs request that the Court find that the Decedent settled an express trust in which [Lallo] was the trustee, the Plaintiffs were the beneficiaries, the Subject Property was the trust property, the terms were that [Lallo] was to convey the Subject Property to the Plaintiffs outright and free from trust upon the death of the Decedent, [Lallo] committed a breach of trust, and the

> Court declare that [Lallo] holds the Subject Property in constructive trust to remedy that breach."

In reaching his conclusion that no express trust had been created, the judge relied on Lallo's testimony, which he credited, that Michael did not place any conditions on the transfer of the property and did not state that Lallo was to hold the property for the benefit of the plaintiffs, or otherwise use "any other words, imperative or precatory, which created a trust." Furthermore, the judge explicitly found Karen's testimony regarding her father's intent not credible. In addition, he found that Michael's wishes could not be established by the oral statements of the witnesses with whom Michael allegedly spoke, because whatever Michael said was not trustworthy. The judge acknowledged that although the statements constituted hearsay, that fact did not render them inadmissible; however, because Michael was not honest about his intentions and had reasons to prevaricate,[7] those statements were not reliable.

---

[7] The judge observed that

> "[Michael] had motivation to be untruthful with regard to his gift of the Subject Property to [Lallo]. [Michael's] decision to gift the Subject Property to [Lallo] would have likely upset his children with Irene. It especially would have upset Karen, who was residing with him at the Subject Property and did not express any intention of leaving. While [Michael] did not have severe medical conditions at that point, it

8

Next, the judge concluded that the circumstances did not warrant the imposition of a constructive trust. As the judge explained, a constructive trust is a "flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or 'other circumstances' in which a recipient's acquisition of legal title to property amounts to unjust enrichment." Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 246 (2007), cert. denied, 552 U.S. 1099 (2008), quoting Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789, cert denied, 511 U.S. 1142 (1994). In rejecting the plaintiffs' request to impose a constructive trust, the judge focused on the credible evidence -- particularly Lallo's testimony -- that established Michael executed the quitclaim deed in 2012 with the intent to convey the property to Lallo "outright and free from trust with no instructions or limitations whatsoever." Because the deed represented Michael's

seemed likely that he would in the near future. [Michael] did not want to be placed in a nursing home or other type of residential care facility. He likely thought he needed to rely on Karen to care for him to avoid that. If Karen knew she would not obtain ownership of the Subject Property after [Michael's] death, she would be less likely to care for him when he became sick."

9

intentions in 2012, the judge concluded that a constructive trust as an equitable remedy "would not be appropriate."

Next, the judge found that the evidence did not support the plaintiffs' assertion that Lallo had been unjustly enriched. As the judge found, Karen did not pay rent at any time, and the majority of the expenses related to the property were paid by Anderson; consequently, Lallo had not been enriched to Karen's detriment.[8] As we discuss in more detail below, we agree with the judge's reasoning, with only minor exceptions, and affirm the judgment.

Discussion. "We accept the judge's findings of fact in a bench trial unless they are clearly erroneous, . . . and the credibility of witnesses rests within the purview of the trial judge. However, [t]he judge's legal conclusions are reviewed de novo" (quotations and citations omitted). Robert & Ardis James Found. v. Meyers, 474 Mass. 181, 187 (2016).

First, Karen and Christina argue that the judge erred in concluding that the evidence did not establish the existence of an express oral trust. They assert: (1) the law regarding oral trusts does not apply to a claim of ownership of real property; (2) because they did not claim that the circumstances

---

[8] It may be that Christina is in a different position from Karen in this regard, but Christina has not made that argument, at trial or on appeal.

10

established the existence of an express oral trust in their complaint, the judge should not have considered it; and (3) in any event, if ownership of the property could be established by an express oral trust, one existed here.

To begin with, it matters not whether the judge erroneously applied the law of oral trusts to the facts or whether the issue of an oral trust was raised below, because the judge also addressed and soundly rejected the argument that a constructive trust had been created for the benefit of Karen and Christina. Simply put, as Lallo correctly asserts, even if we were to assume error, the error was harmless.

We now turn to the argument that the judge erred because the circumstances warrant the imposition of a constructive trust. We discern no error. To the contrary, the record offers ample support for the judge's finding that Michael intended to transfer the property to Lallo free and clear of any obligation to Karen or Christina. This finding, which is based on the judge's assessment of the credibility of the witnesses, effectively precludes the creation of a constructive trust. Furthermore, there is no evidence to support the claim that Lallo owed a fiduciary duty to Karen and Christina. To the extent that Michael, at times, suggested that Lallo would "do the right thing," that does not support a conclusion that Lallo

11

was aware of any duty placed on her, as the judge found. Moreover, as we have noted, the judge further found not only that Michael's statements were ambiguous, but that he was not honest about his intentions regarding the property.

Lastly, we reject the plaintiffs' argument that certain findings of fact, particularly those on which the judge relied to conclude that Michael intended to transfer the property to Lallo free and clear, are clearly erroneous. Our review of the record demonstrates that the judge's findings are supported by the evidence and that his inferences from those findings are reasonable ones.

As such, contrary to the plaintiffs' assertion, we are bound by those findings and inferences. See Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 183 (2013).

Judgment affirmed.

By the Court (Vuono,
Hershfang & Tan, JJ.[9]),

Clerk

Entered: April 11, 2025.

---

[9] The panelists are listed in order of seniority.